O4QUCUSC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     In re:
3
     CUSTOMS AND TAX ADMINISTRATION
4    OF KINGDOM OF DENMARK
     (SKATTEFORVALTNINGEN) TAX
5    SCHEME LITIGATION,

6                                          18-MD-2865 (LAK)

7                                          Teams Conference

8    ------------------------------x
                                           New York, N.Y.
9                                          April 26, 2024
                                           10:30 a.m.
10
     Before:
11
                          HON. LEWIS A. KAPLAN,
12
                                          U.S. District Judge
13

14                          APPEARANCES

15   HUGHES HUBBARD & REED LLP
           Attorneys for Plaintiff SKAT
16   BY:  MARC WEINSTEIN
          NEIL OXFORD
17        WILLIAM MAGUIRE

18   DEWEY PEGNO & KRAMARSKY LLP
           Attorneys for Defendant, Michael Ben-Jacob
19   BY:  THOMAS DEWEY
     BY:  ELLIOT PETERS
20
     KOSTELANETZ & FINK, LLP
21         Attorneys for Defendants, John van Merkensteijn, Basalt
           Ventures LLC Roth 401(K)
22   BY:  PETER NEIMAN
          NICHOLAS BAHNSEN
23

24

25
```

O4QUCUSC

1                          APPEARANCES (Continued)

2

3    WILMER HALE
          Attorneys for Defendants, Richard Markowitz, RJM Capital
          Pension Plan
4    BY:  ALAN SCHOENFELD
          ANDREW DULBERG

5

6     KATTEN MUNCHIN ROSENMAN, LLP
          Attorneys for Defendants, Robert Klugman, RAK Investment
          Trust
7    BY:  MICHAEL ROSENSAFT
          DAVID GOLDBERG

8

9    K&L Gates LLP
          Attorneys for American Investment Group of New York, L.P.
          Pension Plan, Stacey Kaminer, Robert Crema, Acer
10        Investment Group, LLC
     BY:  BRANDON DILLMAN

11

12   BINDER & SCHWARTZ LLP
          Attorneys for Third-Party Defendant, EDF & Man Capital
          Markets Ltd.
13   BY:  NEIL BINDER
          GREG  PRUDEN

14

15   JOHN HANAMAIRIAN
          Attorney for Acorn Defendants & Cambridge Way Defendants

16   KOSTELANATZ, LLP
          Attorneys for Defendants John Doscas – Sterling Alpha
17        Pension and Defendants David Freelove – Del Mar Pension
          Plan and Federated Pension Plan
18   BY:  SHARON McCARTHY

19

20

21

22

23

24

25

O4QUCUSC

1          THE COURT:  Good morning, everybody.

2          I'm calling about this request for letters rogatory.

3    And these are all lists, I think, but, I thought it better to

4    straighten things out before rather than after you all go off

5    to do this, if that's what's going to happen.

6          First of all, Mr. Weinstein, I don't really understand

7    the last sentence of the top paragraph on page 1 of the

8    defendants' memorandum.  You join in the motion provided that

9    certain things that haven't happened yet and may or may not

10   happen in the future happen?  What happens if they don't happen

11   in the future?  Do you then retroactively don't join in the

12   motion?

13         MR. WEINSTEIN:  Your Honor, I think the two --

14   essentially the two conditions that we had for joining, one was

15   just that we don't object to them taking the deposition as long

16   as, obviously, we have the right to also examine.  So that was

17   just -- I just want to make that clear that we would have the

18   right to cross-examine.

19         If it turns out for some reason that the Danish court

20   did not permit that, I think we would ultimately argue to the

21   Court that his testimony should not be admissible because we

22   didn't have the right to examine, but that -- so we're not

23   saying that the proceedings shouldn't go forward on that basis.

24   It just may -- the outcome of it, depending on how the Danish

25   court feels with it, may impact, you know, our argument on

O4QUCUSC

1    admissibility.

2                THE COURT:  That's what I thought you were getting at.

3            So in substance what this is intended to say is that

4    you join in the motion but without prejudice to any objection

5    you might have to the use of the testimony in due course, yes?

6                MR. WEINSTEIN:  That's a fair way of putting it, yes,

7    your Honor.

8            I think the second issue was, again, it's just that we

9    did not want -- nobody knows how long this might take,

10   hopefully, it's done expeditiously, but, of course, we don't

11   know anytime you have letters rogatory when it might happen,

12   especially with someone who is in a foreign prison facility.

13           We just wanted to make clear to the Court, I don't

14   think this would be part of what goes to the Danish court, but

15   that we do not want this to delay our trial.  So if it turns

16   out that this deposition, for some reason, can't take place,

17   one, ever, but, secondly, you know, past when we're going to

18   start our trial, our position is the trial should start.  This

19   is not a delay option.

20               THE COURT:  Well, what's the defendant's position on

21   that?

22               MR. DEWEY:  Good morning, your Honor.

23           Tom Dewey for Mr. Ben-Jacobs speaking for the

24   defendants.

25           We think this is critical testimony.  We have every

1    interest in moving it along as expeditiously as possible.  We

2    are hopeful, as we've discussed with our colleagues at Hughes

3    Hubbard, that they could use their good offices representing

4    SKAT to facilitate getting the testimony as quickly as

5    possible.  There are prior instances where we were able to

6    secure testimony by letters rogatory at Hague Convention within

7    a couple of months.  So we absolutely intend to move this along

8    as rapidly as possible.

9        THE COURT:  Well, I assume that's right.  But what

10   happens if it doesn't work?

11       MR. DEWEY:  Well, your Honor, I would say, let's kind

12   of cross that bridge when we come to it.  We think it's

13   critical testimony.  We believe that the jury and your Honor

14   should hear Mr. Shah's testimony.  I think for present purposes

15   we want to move it along as quickly as possible.  And if we hit

16   any road bumps in that process, we'll come right back to your

17   Honor.  We're mindful, obviously, of the January trial date.

18   We are prepared to try the case but we do think Mr. Shah's

19   testimony is very, very important.

20       THE COURT:  And do the defendants all consent to the

21   trial going forward, regardless of whether the testimony has

22   been obtained by them?

23       MR. DEWEY:  Well, I'm not sure I can speak for all of

24   my colleagues on that point.  I think our -- my position, at

25   least, Mr. Ben-Jacob's position, is that we should do

O4QUCUSC

1    everything possible to secure this testimony so that Mr. Shah

2    can be presented to your Honor and the jury on January 7th.

3            THE COURT: Mr. Dewey, I took that as given, but I

4    asked a specific question.

5            MR. DEWEY: Yes. I think I would need to speak to my

6    cocounsel on that, your Honor. We do have a matter of eight or

7    nine months. So I'm very hopeful that we would be able to

8    accomplish that given the track record of accomplishing Hague

9    Convention requests quickly in this case.

10           THE COURT: Well, look, I have a significant concern

11    here, and that is that according to your papers he's been in

12    Holland or Denmark for four months before you filed this

13    application. And I don't see why, with a trial already

14    scheduled and with presumably the defense knowing full well

15    where he was all along, I should throw up a potential road

16    block to moving this case to a disposition. This is pending

17    here now for over five years.

18           MR. DEWEY: Understood, your Honor. We did raise the

19    matter with you at our last conference, which is why we brought

20    on the application as promptly as possible under the

21    circumstances, and I am very hopeful that we're able to secure

22    the testimony promptly, particularly since we do have the

23    cooperation of our friends at Hughes Hubbard.

24           THE COURT: Well, I have reservations about signing

25    this. Obviously, the testimony is potentially very important,

O4QUCUSC

```
 1    but it should have been done a long time ago.  And now what
 2    you're trying to do is have your cake and eat it too.  The cake
 3    is his testimony and the eating is preserving your ability to
 4    try to stall the trial, if, for one reason or another, the
 5    testimony isn't obtained in advance of January 7$^{th}$.
 6    Everybody wants it to be, but what if?
 7              MR. DEWEY:  To be clear, your Honor, we do not have
 8    any interest in stalling the trial.  When Mr. Shah became
 9    present and president available, if you will, in Denmark, we
10    brought it to your Honor's attention and we made the
11    application.  So we want to go forward with the testimony as
12    quickly as possible.  We're very mindful of the trial date your
13    Honor set.  And we have every intent of being able to meet that
14    date, particularly if we get cooperation from the folks at
15    SKAT.
16              THE COURT:  I'll think about it, frankly.  And I would
17    like to hear from the defendants on whether they're going to
18    all commit to proceeding to trial on January 7$^{th}$ unless
19    otherwise ordered regardless of whether this is completed.
20              MR. DEWEY:  Okay.
21              THE COURT:  I don't know what the Danish courts will
22    do.
23              MR. WEINSTEIN:  Your Honor, may I raise two other
24    issues related to this?
25              And, of course, look, we will cooperate as much as we
```

O4QUCUSC

1    can to do things expeditiously, but we've heard many time from

2    defendants before that because SKAT is part of the Danish

3    government, it must be able to influence, you know, what

4    happens in this or other situations.  It's just not the case.

5    Of course, we will do what we can but I can't promise at all

6    that we have some kind of persuasion over either the courts of

7    or the criminal justice system to make this happen on any

8    particular timeframe.

9        The two additional items, your Honor, one is just if

10   the Court, and I apologize because it's not in the papers, if

11   the Court was to grant the request, there is a list of topics,

12   you know, they -- defendants have proposed some, we added a

13   few, it was a joint proposal on the topics.  There is one other

14   topic, to the extent that the defendants still are objecting to

15   the admissibility of documents from Sanjay Shah's entity as not

16   potentially authentic, we would like to add to the list, you

17   know, the authenticity of documents coming out of his shop.  I

18   think it's related to the substantive subject matter topics,

19   but we just want to make clear that this is something we would

20   want to ask him, to the extent that the defendants are still

21   even still challenging that.  That's one.  And we can send your

22   Honor language to that effect very quickly.

23       The second is a second potential deposition.  We had

24   raised this with the defense when they sent us draft papers on

25   the Shah motion, which is, I think as your Honor now knows,

O4QUCUSC

1    there's another individual who was indicted, Mark Patterson,

2    who worked at Solo Capital with Sanjay Shah.  He, similar to

3    Shah, was arrested, extradited.  He ultimately pled guilty.  I

4    think we put that in our most recent submission to the Court on

5    update on foreign proceedings.  We would -- if the defendants

6    are going to take Mr. Shah's deposition, and in light of the

7    fact that we expect Mr. Shah to say that while there were no

8    shares in this closed loop trading, it was somehow legal, it

9    was not a problem, Mr. Patterson, one of his inside associates,

10   pled guilty to the offense in Denmark and said that, you know,

11   he determined that this was a fraud because it was a closed

12   loop system of purported trading.

13          In fairness, as a counterpoint to what Mr. Shah might

14   say, we would like to take Mr. Patterson's deposition now that

15   he's out from under his criminal case other than the fact that

16   he's pled guilty and is in prison.  It would be on the same

17   expeditious manner.  He's being held in a Danish prison.  We

18   had sought defendants' consent to include it in this motion

19   earlier this week.  As is their right, they objected to that.

20   So we would, if the Court is inclined to grant the motion on

21   Mr. Shah, we would, as soon as Monday, file a motion seeking to

22   also have Mr. Patterson's deposition taken.

23          THE COURT:  Mr. Dewey, what do you want to say?

24          MR. DEWEY:  Okay.  On the additional topic that

25   Mr. Weinstein has raised, I do not think that that would be a

O4QUCUSC

1    problem on behalf of the defendants.  That's not something that

2    we were going to have a problem with at all, if they want to

3    examine Mr. Shah on additional issues, although we're happy to

4    confirm that.

5            As to Mr. Patterson, the position is rather than

6    different.  Mr. Patterson was not disclosed by anyone as a

7    person with knowledge, and Mr. Patterson was, in fact, in the

8    U.K., and accessible to SKAT for years, to your Honor's point

9    about delay, and yet there was no application made to take his

10   testimony during the discovery period.

11           The third point, just to emphasize, your Honor, we

12   think it's really important that Mr. Shah testify at this

13   trial.  He testified for days in Denmark about this strategy.

14   He testified that he believed it was lawful, that he had vetted

15   it with a number of different people, and my understanding is

16   that he's going to testify similarly in the U.K. proceeding.

17   It is very important to us, Judge, that we be able to present

18   that testimony.

19           THE COURT:  Well, I imagine Mr. Weinstein would say

20   it's very important to them that they be permitted to present

21   the testimony of Mr. Patterson.

22           MR. DEWEY:  I mean, I look forward to seeing the

23   application and we'll respond to the application.  We think

24   there are very significant differences between Mr. Patterson

25   and Mr. Shah, but, obviously, they have every right to seek his

O4QUCUSC

1    testimony.

2              THE COURT:  You're a master at not committing to

3    anything.

4              MR. DEWEY:  Occupational hazard, Judge Kaplan.

5              THE COURT:  Pardon?

6              MR. DEWEY:  I said, occupational hazard, you Honor.

7              THE COURT:  Well, yes.

8              What about the authenticity problem?

9              MR. DEWEY:  I don't think we're going to have a

10   problem with that.  I would just like to confirm with my

11   codefendants, but if there are additional topics they want to

12   cover with Mr. Shah, I don't expect that would be a problem.

13             THE COURT:  Well, what about getting the authenticity

14   resolved rather than going to Europe to take testimony on

15   authenticity?

16             MR. DEWEY:  Well, we can do that as well.  I'm happy

17   to confer with our colleagues on it, your Honor.

18             THE COURT:  Okay.  Let me move on to two other

19   questions.  Your proposed letter lists subjects, not questions,

20   and, thus, assumes that if a Danish court grants the letter, it

21   will let counsel examine.  Now, that's often true, and it's not

22   always true.  I don't know about that Danish courts in

23   particular, but I've had some experience with letters rogatory

24   and some countries will insist or some judges will insist on

25   conducting the examination, and I find it very hard to see that

O4QUCUSC

1    there would be much value to either side from this deposition

2    if the Danish courts were to conduct the examination

3    themselves.  Am I mistaken?  You have to give a list of

4    questions for them to ask.

5            MR. DEWEY:  It's Tom Dewey for Mr. Ben-Jacob.

6            I take your Honor's point.  I'm not sure I entirely

7    agree.  I would respectfully suggest that that is a bridge we

8    can cross, you know, once the letters are signed and we confer

9    with our colleagues at Hughes Hubbard.

10            THE COURT:  I hope it's not in Baltimore.

11            MR. DEWEY:  As do I, your Honor.  As do I, your Honor.

12            And the precise mechanics of how the testimony will

13    work, obviously, is something we're going to have to work out

14    with Hughes Hubbard, my cocounsel, and the folks in Copenhagen

15    or Glostrup or wherever we take him.  I think, as to whether

16    there would be value in the judge asking questions, I would

17    reserve on that, and I think we just have to try and come up

18    with a procedure that is workable and that will allow us to

19    present the testimony in a way that is useful to your Honor and

20    the jury.

21            THE COURT:  I think you better get this worked out too

22    before I sign anything because what I see here is potential for

23    endless delay, which I'm unlikely to accommodate.

24            Now, one, the matter of utter form, on page 9, you

25    have a statement about the United States recognizing its

O4QUCUSC

1     testimonial privilege against criminal self-incrimination.

2     Obviously, I know what that means, but I'm not sure a Danish

3     judge does.  And a more accurate statement, in any event, would

4     probably be something like United States law in certain

5     circumstances recognizes a testimonial privilege against

6     compulsory self-incrimination.  Certainly, there's no privilege

7     for not taking a plea.  And I would have simply interlineated

8     that, but I have a feeling that if I ultimately sign the

9     letter, the Danish authorities are not going to be very happy

10    with one that has handwritten changes in it.  So you might take

11    that into account.

12            I'm not going to do anything until I get a report from

13    you on all the issues that we've raised and an application from

14    the plaintiffs, if they're going to make it.  And as of now,

15    you're on trial for January 7th, and if this takes the whole

16    summer, you're still on trial January 7th.  I hope you all

17    understand that.

18            MR. DEWEY:  Absolutely understood, your Honor.

19            THE COURT:  Okay.  I thank you.  I hope you have a

20    good weekend.

21            MR. WEINSTEIN:  Your Honor, Marc Weinstein, may I

22    just -- may I add one comment?

23            Just with respect to the procedure that your Honor

24    asked about, as far as the Danish judge, how they may proceed

25    if the deposition goes forward, I don't think we will know that

O4QUCUSC

1    until there is a judge assigned because it's our understanding

2    that it's within the discretion of any particular judge.  There

3    is very little precedent in Denmark for how these actually play

4    out.  And so we just won't know.  It will be entirely up to the

5    judge's discretion.  So that -- we will not be able to resolve

6    that in advance.

7              THE COURT:  Sure.  Here you're asking me to sign a

8    letter rogatory knowing that the possible outcome is that the

9    judge will not permit counsel to conduct examination in the

10   U.S. style, but will do it himself in whatever style he or she

11   wishes to do it, and you don't have in here a fall-back

12   position beyond giving him or her a list of subject matters.

13   And what happens if it turns out he runs down the list in an

14   hour or an hour and ten minutes, you get nothing much of value,

15   probably nothing admissible, that prejudges something which I

16   don't mean to prejudge, and then you want to come back to me in

17   December, to say, oh, we want to start over all again with a

18   new letter rogatory.  Doesn't it makes sense to provide for

19   that now?  I leave that as a rhetorical question, but I look at

20   this and I see quite a number of potential problems that at

21   least could threaten the schedule.

22             MR. WEINSTEIN:  Yes, Marc Weinstein, your Honor,

23   understood.  And we will discuss with defense counsel what, if

24   anything, can be done about that in advance and provide your

25   Honor with an update.

O4QUCUSC

1          The second thing is just, because Mr. Dewey made note

2     of this before, about the difference between Mr. Shah and

3     Mr. Patterson, in their view Mr. Shah being unavailable until

4     recently, first, as your Honor noted, he's been available at

5     least in Denmark for four months, but they've actually made no

6     showing in their papers that he was unavailable when he was in

7     Dubai.  They cite two cases, one from 22 years ago and one

8     from, you know, 15 years ago that was open ended, it wasn't

9     clear how those actually resolved, but that -- at those dates,

10    there was no provision for letters rogatory, but there is

11    actually no showing that during the last five years, he would

12    have been unavailable had they chosen to pursue it.  We're not

13    objecting on that ground.  We're okay if they want, you know,

14    to try to get a deposition if it doesn't delay the trial.  But

15    if that's the argument as to why Mr. Patterson shouldn't be

16    deposed, well, then, they're on equal footing there, there is

17    no actual difference.

18         MR. DEWEY:  Obviously, your Honor, Tom Dewey, United

19    Kingdom and Dubai are differently situated in this regard,

20    dramatically so.  But as Mr. Weinstein has joined in the

21    application with respect to Mr. Shah, so, from that

22    perspective, I don't think it's a live issue.

23         THE COURT:  Well, I'm not sure that that's right.

24    You're asking me to threaten to upset an apple cart that has

25    taken a very long time to get this close to the destination,

O4QUCUSC

1   and you're asking me to do it on the premise that you couldn't

2   have gotten at him in Dubai, and it's relevant to me to know if

3   that's really true.

4           MR. DEWEY:  We're happy to address it, your Honor,

5   but, to be clear, as Mr. Weinstein mentioned to your Honor at

6   the top, this is a joint application to the Court.

7           THE COURT:  Well, I understood what Mr. Weinstein

8   said.  It was a very interesting sentence in that memorandum

9   that couldn't go unnoticed.

10          Okay.  I thank you.  I'm not going to set a time limit

11  on this because you have your built-in need to move fast.

12          MR. DEWEY:  We do, indeed, your Honor.

13          THE COURT:  Godspeed.  Okay.  Thank you.

14          MR. DEWEY:  Thank you very much.

15          MR. WEINSTEIN:  Thank you, your Honor.

16          THE COURT:  Bye bye.

17                              o0o

18

19

20

21

22

23

24

25